## Thompson vs. Jackson, Owsley & Co.

### ERROR TO FAYETTE CIRCUIT.

On failure to comply with a contract to deliver eight hundred hogs to be slaughtered between specified periods, if the hogs are not delivered according to contract, and the plaintiff show his readiness to slaughter them according to his undertaking, the criterion of damages is the net profit of slaughtering the hogs over the expense and trouble of slaughtering at customary prices.

Judge CRENSHAW delivered the opinion of the court.

Jackson, Owsley & Co. and Thompson made the following agreement:

"Received, Lexington, June 21st, 1851, of Jackson, Owsley & Co., their acceptance for twelve hundred and sixty-three dollars and twenty-five cents, payable in Louisville, at six months from this date, and for the further consideration that they are to accept the further sum of seventeen hundred and forty-seven dollars, payable in Louisville about the 1st of January next, I bind myself to furnish Jackson, Owsley

& Co., at their pork house in Louisville, from the 1st of November to the 1st of December next, eight hundred well fatted hogs, to slaughter at customary rates, and from the sales of said hogs said Jackson, Owsley & Co. are to pay themselves for their acceptances.

JACKSON, OWSLEY & CO.

HAYNER THOMPSON."

Thompson failed to deliver the eight hundred hogs as stipulated, and failed to pay said sum of $1,747, and this suit is brought to recover damages for the failure to deliver said hogs, and to recover for the non-payment of said sum of $1,747, which the plaintiff alleges he had to pay for Thompson.

The only question made in the cause is as to the correctness of the instruction of the circuit court in regard to the criterion of damages for the non-delivery of the hogs. The court instructed the jury that, "if they believed, from the evidence, that the plaintiffs were ready and prepared to slaughter the hogs, and the defendant failed to deliver them according to contract, the plaintiffs had a right to recover damages to the extent of the net profit, over and above the expense and value of the trouble of slaughtering the hogs, at customary prices, had all of the eight hundred hogs been delivered and slaughtered by them."

The profit to the plaintiffs for slaughtering arose altogether from the hair and offal of the hogs, which would have been theirs, had the hogs been delivered according to contract; and the simple question is, what injury the plaintiffs sustained by the failure of the defendant to deliver? If the plaintiffs would have made the amount of the net profit of slaughtering; if they would have been worth that much more had the hogs been delivered and slaughtered, and if this profit is wholly lost to them by the defendant's failure to deliver them, it is hard to conceive of any other criterion of damages than that fixed by the court in its instruction to the jury. It is argued, that the only criterion is, whatever loss an honest and in-

On failure to comply with a contract to deliver eight hundred hogs to be slaughtered between specified periods, if the hogs are not delivered according to contract, and the plaintiff show his readiness to slaughter them according to his undertaking, the criterion of damages is the net profit of slaughtering the hogs,

THOMPSON
*vs.*
JACKSON,
OWSLEY & Co.

over the ex-
pense and trou-
ble of slaugh-
tering, at cus-
tomary prices.

telligent jury may believe, from the proof, actually resulted from the non-delivery. And how is this loss to be ascertained, where it is shown that every preparation had been made for the slaughtering, and that it could have been accomplished in a half day, or a day at most, but by enquiring into the actual expense and trouble of slaughtering, and ascertaining the net profit? The argument is, that the plaintiffs may have failed to slaughter the hogs, had they been delivered. This is an unreasonable supposition, in a case where all things were in readiness, and in readiness at considerable expense of course, for the purpose, where the very purpose of engaging in the business of slaughtering hogs was to make money, which could not be done unless hogs could be got to slaughter, and unless they were actually slaughtered. As well might it be contended, that the proper criterion of damages in the failure to deliver personal property at a particular time, at a particular price, is not the difference between the price paid, or to be paid, and the vendible value of the property in the market at the time and place, when and where it was to have been delivered, because the vendee might neglect to sell, and thereby fail to realize the difference between the price given, or to be given, and the price that might be received. The motive for money making is too strong to authorize such a supposition. True, property may be purchased for the vendees' own use, and he may not, therefore, sell or desire to sell; but this can make no difference in the principle involved, for, if he needs it for his own use, and does not get it, he must become a purchaser at the market price, and is injured to the extent of the difference which he has to pay in the market, and that at which the property, to have been delivered, was purchased, when that property at the time of delivery commands a higher price than at the time it was purchased. And so it might be said in regard to the offal of hogs to be delivered to be slaughtered: a part of it might be needed for consumption by the slaughterer, and he

might not desire to sell the whole, and if he has to go into the market to buy, he loses the value of what he would have consumed, and what could have been sold in the market had he been furnished with the hogs to be slaughtered; and that is the value of the offal in the market to the slaughterer, after deducting the expenses of slaughtering. The loss sustained by the failure to deliver personal property which has been sold, is measured by what it was worth, or by what would or could have been made, had it been delivered; and we do not see why the loss, sustained by by the failure to deliver hogs to be slaughtered, should not be measured by what would or could have been made, *clear money*, had they been delivered. There must be some rule by which to measure the damages, and we know of none so well calculated to do complete justice as that which establishes the criterion to be the net profit which, to a moral certainty, would have been realized by the delivery of the hogs to be slaughtered.

This case is not to be likened, in all respects, to the case of *Chamberlin v. McCallister*, 6 *Dana*, 352, referred to by the counsel for the defendant. In that case it was decided, that where a man had undertaken to perform a particular work, from the performance of which he was prevented by the party for whom it was to be performed, the recovery was not to be measured by what he would have been entitled to by a full performance, but to be measured by the injury actually sustained on account of the disappointment. In that case, the undertaker, upon his disappointment, might resort to other jobs in his line of business, and might really sustain a very trifling loss in consequence of his disappointment, far less than the amount to be paid for the actual performance of his undertaking. But, in the case under consideration, the slaughtering establishment had been prepared or secured, and all things were in readiness, and the slaughterers could only operate at their establishment. If the hogs which they had engaged

*(margin)* THOMPSON *vs.* JACKSON, OWSLEY & Co.

THOMPSON
vs.
JACKSON,
OWSLEY & Co.

failed to come in, their establishment must cease operations, and stand still at a heavy expense. It is proved that the preparations for slaughtering were ample, and all things in readiness; and it is shown by a majority of the witnesses, that the loss sustained in the failure to get the eight hundred hogs, was not less than six hundred dollars. There is an analogy in this between the present case and that in 6 *Dana, supra,* that in that case the damages actually sustained were decided to be the criterion of recovry, and in this, the criterion is the same. But the two cases differ in the circumstances by which the damages sustained are to be arrived at. In all cases sounding in damages, the criterion of recovery is the actual injury sustained, and that actual injury must be found out by the circumstances attending each particular case. And we think that in this case it was shown, by the facts and circumstances proved, that the injury really sustained was the net profit which, to a moral certainty, would have been realized had the hogs been delivered according to contract; and the instruction of the court, being in conformity to this view, was not erroneous. This case bears a stronger analogy to the cases of non-delivery of personal property sold, than to the case cited in *Dana, supra.*

The various cases supposed by the counsel of the defendant in argument, would, of course have to be tested by the particular circumstances of each case, and the criterion of recovery would differ according to the differences of the circumstances attending them. A blacksmith, to whom a certain number of horses had been engaged to be shod, might not be entitled to recover the full price for shoeing, or even the net profit thereof, upon a failure to furnish them to be shod, because he might be as profitably employed in other operations in the line of his business; and his injury, if an appreciable one, might be very slight. But if it were shown that the blacksmith for a valuable consideration, had engaged the horses to be shod, and that he

was ready to shoe them, if furnished, and that in consequence of the failure of their being furnished for that purpose the smith was thrown out of employment, and could procure no other within the time he had engaged to shoe them, might he not be injured to the extent of the net profit of the job, and might he not recover to that extent?

The amount of the verdict in this case, upon the hypothesis that the court properly instructed the jury, was fully authorized by the testimony; and being of opinion that the instruction was not improper, the judgment is affirmed.

ROBERTSON for plaintiff; ROBINSON and JOHNSON for defendants.